Rockingham,
No. 5871.

FRANK W. ROSS

*v.*

HOLLIS I. BROWN.

December 30, 1969.

*Scammon, Gage & Whitman ( Mr. Robert G. Whitman* orally ),
for the plaintiff.

*Perkins, Holland & Donovan ( Mr. Robert B. Donovan* orally ),
for the defendant.

DUNCAN, J.   By his petition to quiet title the plaintiff alleged
that the boundary line between the property owned by him on the
north side of South Main Street in Seabrook and the property
belonging to the defendant to the west thereof is approximately
153 feet east of the Blackwater River which would be approxi-
mately 40 feet east of the defendant's building. The action was
heard by a master ( Leonard C. Hardwick, Esq. ). The Master's
report recommended the establishment of a line 12 feet east of the
defendant's building. Subject to the defendant's exceptions, the
Master's report was approved and a decree entered in accordance
therewith by order of the Superior Court ( *Leahy*, C. J. ) under
date of June 11, 1968. The defendant seasonably excepted to the
denial of certain requests for findings and rulings, to certain
findings and rulings made by the Master, and to the denial of his
motion to set aside the decree of the Superior Court. All questions
of law presented by the defendant's exceptions were reserved and
transferred by *Bownes*, J.

The defendant Brown operates a lobster pound and restaurant
which is situated on the northerly side of South Main Street just
east of the Blackwater River. The dispute between the parties
was precipitated when Brown undertook to expand his parking lot
by filling in marsh land which the plaintiff Ross claims to own
easterly of the lobster pound. As stated by the Master: "The
plaintiff claims that the [boundary] line lies eleven or twelve feet
easterly of the easterly sideline of building presently situate on the
defendant's property . . . . The defendant claims that the line is
marked by a creek and ditch some four hundred feet easterly of
the line claimed by the plaintiff."

The plaintiff Ross claims under a deed from Alfred and Harvey Nutting dated February 25, 1954. The defendant Brown's claim is based upon a deed of the town of Seabrook dated March 4, 1950 and a quitclaim deed of the heirs of Charles O. Ackerman dated October 18, 1959. Both deeds to the defendant describe the property conveyed as bounded on the west by the river, on the south by South Main Street, and on the east by land now or formerly of Alfred and Harvey Nutting. The deed from the town contained the following recital: "The frontage on South Main Street has been described in prior deeds as two hundred (200) feet."

The deed from the Nuttings to the plaintiff Ross dated February 25, 1954 bounded the conveyed premises on the west by land of the defendant Brown and "Southerly by South Main Street about eleven hundred eighty (1,180) feet, this distance being approximate, the Westerly terminus being approximately two hundred (200) feet Easterly of the Northerly abutment of the bridge of Blackwater River." The southerly terminus of the easterly boundary, which was Ocean Boulevard, was described as "the point where Ocean Boulevard intersects the Northerly side of South Main Street."

The Master adopted the testimony of an engineer called as a witness by the plaintiff who fixed the dividing line between the lands of the parties at a point some 12 feet east of the defendant's building. The Master found and ruled "that the boundary line between the land of the [parties] is the line indicated on Plaintiff's Exhibit #1 as running N 10° 08' 30" E for a distance of 128.34 feet." The method by which the plaintiff's expert established the division line between land of the parties is summarized by the Master's report as follows: "That portion of the plaintiff's property which lies adjacent to land of the defendant and is northerly of the highway was carved out of the lot conveyed in the Fraser-Nutting deed. Both the defendant's expert and the expert called by the plaintiff agreed that that portion of the property lying southerly of the highway could not be laid out on the ground from the deed description, and the plaintiff's expert disregarded that portion of the description. The description in this conveyance began: 'Beginning at the northeasterly corner thereof at a stone bound at the corner of marsh land of said Nutting and marsh of the Commonwealth of Massachusetts.' There was no evidence that showed a stone bound is presently locatable. However, the plaintiff's

expert was able to locate this point by referring to the deed of George D. Paul to the Commonwealth of Massachusetts and the State of New Hampshire ( Plaintiff's Exhibit 2B ) and the sketch that was attached to the conveyance ( Plaintiff's Exhibit 2A ).

"The Master finds that the point thus determined by plaintiff's expert was in fact the point of beginning in the Fraser-Nutting deed.

"The final bound in the Fraser-Nutting deed fixes the northerly boundary of the premises therein conveyed, such bound being the present northerly bound of plaintiff's land. The course is described as follows: 'Thence southeasterly by marsh of said Smith and by land of Nutting about 690 feet to place of beginning.' The engineer needed only to measure back on a northwesterly course 690 feet and he would thus locate the northwesterly corner of plaintiff's lot. The problem would, of course, arise as to the actual course of this line, as 'southeasterly' as used in the Fraser-Nutting deed is not specific as to course. In order to assist him, the engineer had the benefit of a plan of Seabrook Beach prepared by one Titcomb in 1925 ( Plaintiff's Exhibit #7 ). While this plan was prepared primarily for the purpose of laying out lots in the beach area and not within the area herein involved, it did indicate a line similar to that arrived at by the plaintiff's expert for the purpose of marking the northerly boundary of plaintiff's property. It is worthy of note that on the plan of the defendant's expert the course of the line marking the northerly boundary of plaintiff's property falls in the same general area as determined by the plaintiff's expert.

"The Master finds that the point located by plaintiff's expert on his proposed plan ( Plaintiff's Exhibit #1 ) marks the northwesterly corner of plaintiff's premises at a point where it intersects with the easterly sideline of the defendant's property.

"With this point determined, it is only necessary to determine the course that the line runs from this point in a southwesterly direction to the highway. The Fraser-Nutting deed describes this line in reverse: 'Thence northeasterly by marsh of said Smith about 150 feet to a corner.' The plaintiff's engineer again referred back to the Titcomb plan for this course and determined that the line ran south 10° 08' 30'' west for a distance of 128.34 feet to the highway. While the Fraser-Nutting deed sets forth that this line is 150 feet in length, a certain portion of the premises had been taken by the State for highway purposes.

"The Master finds and rules that the boundary line between the land of the plaintiff and that of the defendant is the line indicated on Plaintiff's Exhibit #1 as running N 10° 08' 30" E for a distance of 128.34 feet."

As previously indicated herein, the southerly terminus of the line which the Master found to be the common boundary is situated 11 or 12 feet easterly of the easterly sideline of the defendant's building. As shown on the plan under date of September 1966, which is Plaintiff's Exhibit #1, this point is approximately 131 or 132 feet from the east bank of the Blackwater River measured along the frontage on South Main Street. The Master accepted as the northerly boundary of the Ross land the boundary shown on but not identified by the Titcomb plan of 1925 which was used by the plaintiff's expert to determine the course of that line. Having thus determined the location of the defendant's northeast corner, the Master also accepted the judgment of the plaintiff's expert that the course of the dividing line between the parties was that shown by the Titcomb plan as N 10° 08' 30" E. As a result, the southerly boundary of the Brown land as transposed by the plaintiff's expert from the Titcomb plan to his own plan ( Plaintiff's Exhibit #1 ) shows the defendant's southwesterly corner to be some 61 feet out into the river. This, despite the fact that the Titcomb plan does not show the river, but does show a distance from the southeasterly corner of the land assumed to be the Brown land to Ocean Boulevard along the course of the highway as it then existed before widening, which scales to approximately 1,280 feet, or 100 feet more than the frontage of the Ross land on the highway as described in the deed from the Nuttings to Ross.

The defendant excepted to the following finding by the Master: "Measuring the two hundred feet from the Blackwater River, given in the deed [to the plaintiff] as the westerly boundary of the lot, would so place the easterly boundary as to exclude that part of the built-up parking lot now claimed by the defendant." The area of fill for the parking lot is indicated on Plaintiff's Exhibit #1; and as pointed out by the defendant a measurement of 200 feet from the easterly bank of the Blackwater River as shown thereon comes to a point approximately midway of the filled area or some 70 feet east of the point established by the Master as the defendant's southeast corner.

We are of the opinion that the defendant's exception to the finding that measurement of 200 feet from the river would exclude the portion of the built-up parking lot claimed by the defendant must be sustained. The testimony of the defendant's engineer was that the easterly bank of the river had not changed materially over the years in question. The plan prepared by this witness (Defendant's Exhibit R) purports to show the location of the abutment of the old bridge across the river, referred to in the deed from the Nuttings to the plaintiff Ross, which described the westerly terminus of his southerly line as "approximately two hundred (200) feet Easterly of the Northerly abutment of the bridge of Blackwater River." As shown on Exhibit R this abutment is approximately in line with the easterly sideline of the river in its present course.

On the other hand the Master had before him the testimony of Harvey Nutting, one of the plaintiff's grantors, given at a previous trial of this case, that the east bank of the Blackwater River had "receded toward the ocean" so that the river "is twice as wide as it was" in the early 1900's.

It is plain from the context in which the finding appears that it relates to measurement from the river's edge as it existed in 1954 and later; and nowhere does the report disclose that the Master placed any reliance upon the testimony of Harvey Nutting quoted above. The finding excepted to must be considered erroneous. The extent to which it may have affected the Master's final conclusion as to the location of the common boundary line cannot be determined on the record before us.

On the present state of the record, the plaintiff cannot be held to have sustained his burden of proving that the southerly end of the common boundary is where the Master found it to be, approximately 137 feet from the river. This location conflicts with plain indications in the deeds under which both parties claim, that the southerly terminus of the line was 200 feet easterly of the river, and 1180 feet westerly of Ocean Boulevard. Accordingly the Master's finding as to the location of the division line is set aside, and the decree adopting the report is vacated.

Subject to the defendant's exception, the Master denied his request for a ruling that the action is barred by the plaintiff's laches. The Master found that when the defendant commenced to build up the parking lot, the plaintiff's predecessor in title,

Nutting, had called the defendant's attention to where he believed the line to be; and that after the plaintiff acquired title in 1954, he notified the defendant that the fill was a trespass upon his property. According to the plaintiff's testimony, in 1954 the fill extended approximately halfway across the area finally covered, and thereafter was gradually extended. The plaintiff's action was commenced in 1962, and first tried in that year.

The Master found and ruled that the plaintiff was not guilty of laches "in view of the notice that the defendant had relative to possible question as to location of his easterly boundary line, plus the notice given to him by Nutting and the plaintiff of alleged trespass." We consider that this conclusion could properly be reached upon the record. See RSA 508:2. The defendant's exception to the ruling is overruled.

Other exceptions taken by the defendant fall short of disclosing reversible error and are also overruled. The case is remanded for reconsideration in the light of this opinion.

*Remanded.*

LAMPRON, J., did not sit; the others concurred.